NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-225

JOANNE KELLY

vs.

JOHN KELLY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The wife, Joanne Kelly, appeals from a judgment, as amended judgment, and a supplemental judgment on her complaint for contempt entered in the Probate and Family Court.  Concluding that the judge acted within her discretion in (1) finding, pursuant to the agreement for judgment of divorce ("agreement"), the husband not guilty of contempt where he maintained sufficient funds in his 401(k) account, see 26 U.S.C. § 401(k), to satisfy the wife's share as calculated on the date of the agreement, and (2) vacating the qualified domestic relations order ("QDRO") as incompatible with the agreement, we affirm.

1.  Background.  On October 20, 2022, the parties entered into an agreement for judgment of divorce that, among other

things, divided the husband's "Verizon 401k account . . .
equally (50/50) between the parties."  As of October 20, 2022,
the balance of the husband's 401(k) account was $358,901.97.[1]
Over the next two years, the husband withdrew $222,392.75 from
the account.  On October 4, 2024, the balance was $269,164.05.
There is no evidence that the account balance was ever below the
$179,450.99 necessary to fund the wife's share.

The agreement also required that "[a]ny Qualified Domestic
Orders shall be completed by Attorney Lisa Erhmann who shall be
paid equally by the parties."  The subsequent QDRO stated that
the wife's interest in the 401(k) account "will be 50% of the
[husband's] vested account balance as of October 20, 2022 (the
'valuation date')."  The QDRO stated that the wife's interest
"shall be adjusted for earnings, gains and losses from the
valuation date to the liquidation date."  A judge adopted the
QDRO on August 23, 2023.

In early 2024, the parties received notice from Verizon
that the husband's account balance was "not sufficient [to]
accommodate the award to the [wife] as stated in the Order dated
August 23, 2023," presumably because of investment gains since
October 20, 2022.  On September 5, 2024, the wife filed a

_____

[1] The judge found that the value was $358,901.  The parties
properly do not quibble over the missing 97 cents.

2

complaint for contempt against the husband, alleging that the husband "has not complied with nor obeyed the October 20, 2022 Judgment and/or Qualified Domestic Relations Order dated August 23, 2023." Specifically, the "[h]usband's Verizon 401k Account . . . did not contain funds sufficient to support the dollar amount the award specified in the [QDRO]."

On December 26, 2024, the judge held a hearing on the wife's complaint for contempt. The wife's attorney argued that the husband committed contempt by not leaving enough money in the account to pay the wife the "two years of growth, at a very high rate of return" on her share. The husband confirmed that he made the withdrawals and stated that "my attorneys at the time told me, keep $180,000 in that account because the amount was $358,000 and change. It's what's always been there." The judge found the husband not guilty of contempt, concluding that "[t]he parties' separation agreement is clear and unequivocal," and "the parties agreed that Husband's Verizon 401(k) account would be divided equally (50/50) as of the Date of Divorce." The judge ordered the parties to work together to implement the QDRO.

On February 7, 2025, the judge amended the judgment, clarifying that "[t]he QDRO incorrectly provided that the account is to be 'adjusted for earnings, gains, and losses from

3

and after the liquidation date.'"  The judge vacated the QDRO and ordered the parties to "work together to forthwith file an Amended QDRO."  The wife now appeals.[2]

2.  Standard of review.  We review the ultimate finding of civil contempt for an abuse of discretion, "but we review underlying conclusions of law de novo and underlying findings of fact for clear error."  Commercial Wharf E. Condominium Ass'n v. Boston Boat Basin, LLC, 93 Mass. App. Ct. 523, 532 (2018).

3.  Contempt.  "To prove civil contempt a plaintiff must show two elements:  there must be (1) clear disobedience of (2) a clear and unequivocal command."  Feinstein v. Feinstein, 95 Mass. App. Ct. 230, 234 (2019), quoting Smith v. Smith, 93 Mass. App. Ct. 361, 363 (2018).  Each element "[must] be supported by clear and convincing evidence," Rosen v. Rosen, 90 Mass. App. Ct. 677, 691 (2016), quoting Birchall, petitioner, 454 Mass. 837, 853 (2009), and the judge will consider "the

---

[2] The wife also appeals from a "supplemental judgment" issued by another Probate and Family Court judge that continued the matter for review given the husband's acknowledgement that "he may have received gains & losses on accounts inappropriately based on the Judgment of Divorce."  Putting aside the questionable appealability of this order and the wife's failure to include any argument on this point in her brief, we discern no error in the judge's use of her "broad equitable powers to fashion appropriate remedies."  Cabot v. Cabot, 55 Mass. App. Ct. 756, 768 (2002).

4

totality of the circumstances." Smith, supra, quoting Wooters v. Wooters, 74 Mass. App. Ct. 839, 844 (2009).

The plain language of the agreement divided "Father's Verizon 401K account . . . equally (50/50) between the parties." [R 1:28] See Pisano v. Pisano, 87 Mass. App. Ct. 403, 412 (2015), quoting General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) ("When the words of a contract are clear, they must be construed in their usual and ordinary sense"). Nothing in the agreement stated that the wife is entitled to (or subject to) a share of the gains and losses in the account after the date of the agreement. The wife produced no evidence that the balance of the account was ever below the amount necessary to fund her half of the October 20, 2022, value. Moreover, as of October 2024, the account held $269,164.05, which was sufficient to satisfy the husband's obligations. The judge acted within her discretion in finding that the husband did not clearly disobey the agreement.

The wife argues that "[s]ubsequent agreements signed by the Parties clearly stated that in the event of silence or ambiguity on market gains and losses, the same would be included,"

referring to the various QDROs in the case.[3]  The agreement, however, is not ambiguous.  "Where contractual language is unambiguous, we do not resort to extrinsic evidence concerning the contracting parties' intent in order to ascertain the contract's meaning."  Eastern Holding Corp. v. Congress Fin. Corp., 74 Mass. App. Ct. 737, 742 n.5 (2009).  More to the point, that the QDRO included "gains and losses" provides no insight into the parties' intent at the time of the agreement. The QDROs themselves are not evidence of what the QDROs were supposed to say.  See Conner v. Benedict, 481 Mass. 567, 580 (2019) (QDRO is "method by which to facilitate the distribution of . . . marital property rights").  It follows from this discussion that the judge properly vacated the original QDRO and ordered that a QDRO consistent with the agreement be drafted.

---

[3] It is evident that the husband's position is that, to the extent he received any net gains from any of the QDROs for the wife's accounts, those net gains should be returned to the wife.

Accordingly, the amended judgment finding the husband not guilty of contempt and vacating the QDRO is affirmed.

<u>Judgment entered on January 1, 2025, as amended on February 13, 2025, affirmed</u>.

<u>Supplemental judgment entered on May 6, 2025, affirmed</u>.

By the Court (Shin, Ditkoff & Tan, JJ.[4]),

Clerk

Entered:  July 22, 2026.

---

[4] The panelists are listed in order of seniority.

7